UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| LUCKY LINCOLN GAMING, LLC, ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 23 C 16664 |
| v. ) | |
| ) | Judge Sara L. Ellis |
| FATMIR DIKENOSKI, ) | |
| ) | |
| Defendant. ) | |

**OPINION AND ORDER**

Defendant Fatmir Dikenoski worked as a sales consultant for Plaintiff Lucky Lincoln Gaming, LLC ("LLG"), a video gaming terminal operator. After he offered inducements to several video gaming establishments and allegedly made false statements to the Illinois Gaming Board ("IGB"), LLG filed this lawsuit against him. In its first amended complaint, LLG brings claims for breach of contract, tortious interference with contract, and tortious interference with prospective economic advantage.[1] Dikenoski has moved to dismiss LLG's first amended complaint pursuant to Federal Rule of Procedure 12(b)(6). Although LLG sufficiently alleges a breach of contract claim, it has not alleged that Dikenoski intentionally interfered with a contract or prospective economic advantage. Therefore, the Court dismisses LLG's tortious interference claims without prejudice.

---

[1] As LLG confirmed in its supplemental jurisdictional statement, the Court has diversity jurisdiction over this case pursuant to 28 U.S.C. § 1332. *See* Doc. 36.

# BACKGROUND[2]

## I. Company Background

In April 2014, IGB licensed LLG, a company founded by Jeff Rehberger Jr., as a video gaming terminal operator under the Illinois Video Gaming Act, 230 Ill. Comp. Stat. 40/1. LLG provides video gaming terminals to bars, truck stops, restaurants, and other entities with liquor licenses. It is the fifth largest terminal operator in Illinois, operating almost 1,300 video gaming terminals in over 220 locations.

LLG hires sales consultants to obtain Use Agreements, defined as "[a] contractual agreement between a licensed terminal operator and a licensed video gaming location establishing terms and conditions for placement and operation of video gaming terminals by the licensed terminal operator within the premises of the licensed video gaming location," from licensed establishments. Doc. 27 ¶ 11 (quoting 11 Ill. Adm. Code 1800.110). The Video Gaming Act and IGB rules prohibit terminal operators, like LLG, and their agents from offering inducements to video gaming establishments to try and get their video gaming terminals in the establishment.

On December 21, 2017, LLG entered into a Consulting Agreement with Dikenoski, in which Dikenoski agreed to work as a sales consultant to obtain Use Agreements for LLG. The Consulting Agreement provided that Dikenoski could obtain up to $30,000 in compensation for every Use Agreement he obtained. In the Consulting Agreement, Dikenoski agreed not to offer inducements to LLG's customers, consistent with the Video Gaming Act and IGB rules. The

---

[2] The Court takes the facts in the background section from LLG's first amended complaint and the exhibit attached thereto and presumes them to be true for the purpose of resolving Dikenoski's motion to dismiss. *See Phillips v. Prudential Ins. Co. of Am.*, 714 F.3d 1017, 1019–20 (7th Cir. 2013). The Court "also take[s] judicial notice of matters of public record." *Orgone Cap. III, LLC v. Daubenspeck*, 912 F.3d 1039, 1043–44 (7th Cir. 2019).

Consulting Agreement further provided that a violation of the no inducement requirement constituted grounds for immediate termination of the Consulting Agreement and forfeiture of all outstanding compensation that LLG owed Dikenoski. Rehberger also met with Dikenoski to reiterate that he could not offer any inducement to establishments to enter into Use Agreements with LLG.

Despite the prohibition on inducements, on January 12, 2018, Dikenoski offered $5,000 each to four establishments—Blerim Alimi LLC, E.B.V. Grab N Go Inc., Jack's 5th Street Inc., and NL Enterprises, Inc.—to obtain Use Agreements for the installment of LLG machines at their establishments. LLG paid Dikenoski $50,000 for his work pursuant to the compensation schedule included in the Consulting Agreement. LLG did not know of the inducements Dikenoski offered these four establishments at the time it paid Dikenoski his compensation.

## II. IGB Investigation

On December 14, 2017, prior to LLG's hiring of Dikenoski, IGB filed a complaint against LLG for violating several video gaming regulations, which prompted administrative law proceedings. Over the course of four years, IGB dropped several charges and the administrative judge recommended granting summary judgment to LLG on some others. LLG believed it had good defenses to the remaining charges and so did not anticipate receiving a severe punishment.

However, on March 15, 2018, IGB filed an amended complaint, which included additional charges based on LLG, through Dikenoski, offering inducements to customers. IGB based these new charges on interviews with witnesses, including Dikenoski. Dikenoski told IGB investigators on January 26, 2018 that Rehberger told him that "if it's a good account, we will offer them anything to make it happen." Doc. 27 ¶ 26. On March 26, 2018, Dikenoski and Rehberger met to discuss Dikenoski's conduct. During that meeting, Dikenoski denied offering

inducements while working as a sales consultant for LLG and acknowledged that Rehberger had expressly instructed him not to offer any inducements to potential establishments, agreeing to provide a written statement to this effect to IGB. Dikenoski also informed Rehberger that he had other establishments interested in signing Use Agreements with LLG. This meeting led Rehberger to believe that Dikenoski had not offered any inducements to establishments while working for LLG.

After this meeting, Rehberger and LLG had no contact with Dikenoski until October 2019, with Dikenoski's formal role as a LLG sales consultant terminating in May 2018. In an effort to obtain the signed written statement that Dikenoski had offered to provide IGB, Rehberger spoke with Dikenoski in October 2019. For the first time, Dikenoski admitted to Rehberger that he had in fact offered inducements and so would not sign a written statement. Dikenoski also requested that Rehberger not contact Dikenoski again. Meanwhile, Dikenoski continued to cooperate with IGB, reiterating in October 2018 and October 2019 that Rehberger had instructed him to make payments to video locations to induce them into signing agreements with LLG. And at an administrative trial on the charges that took place in May 2023, Dikenoski testified similarly. LLG spent $250,000 in legal expenses defending itself against IGB's inducement charges and faces the possibility that its terminal operator's license will be revoked.

Other Illinois video gaming terminal operators and establishments learned that IGB filed inducement charges against LLG. LLG's competitors used the charges to entice establishments to switch operators away from LLG. Specifically, Big River Gaming, LLC, Side Rhodes, Inc., Caseyville BP Inc., Hi-Way Restaurant, Inc., Hot Spot Restaurant, and D.E.B., Inc., terminated their Use Agreements with LLG. In addition, LLG lost prospective Use Agreements with a number of establishments, including Demma's Lounge, 219 Sports Bar L.L.C., O'Leary's Pub &

Grub, Inc., Lake Villa Post 4308, Bezak Enterprises Inc., Midwest Estimator LLC, Route 3 Bar & Grill LLC, Johnny's Chophouse LLC, Route 3 Hut, LLC, Elmhurst Elks Lodge, Joyful Slots Inc., and New Baden Moto.

## LEGAL STANDARD

A motion to dismiss under Rule 12(b)(6) challenges the sufficiency of the complaint, not its merits. Fed. R. Civ. P. 12(b)(6); *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). In considering a Rule 12(b)(6) motion, the Court accepts as true all well-pleaded facts in the plaintiff's complaint and draws all reasonable inferences from those facts in the plaintiff's favor. *Kubiak v. City of Chicago*, 810 F.3d 476, 480–81 (7th Cir. 2016). To survive a Rule 12(b)(6) motion, the complaint must assert a facially plausible claim and provide fair notice to the defendant of the claim's basis. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Adams v. City of Indianapolis*, 742 F.3d 720, 728–29 (7th Cir. 2014). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

## ANALYSIS

### I.    Breach of Contract

To state a claim for a breach of contract under Illinois law, a plaintiff must plead "(1) the existence of a valid and enforceable contract, (2) substantial performance by the plaintiff, (3) breach by the defendant, and (4) damages caused by that breach." *Ivey v. Transunion Rental Screening Sol., Inc.*, 2022 IL 127903, ¶ 28. Dikenoski argues that LLG has not sufficiently alleged that Dikenoski's offers of inducement to the four establishments that entered into Use Agreements damaged LLG, thus failing to satisfy the fourth element. Dikenoski also raises a

related standing argument, contending that because LLG has not alleged harm stemming from the breach of the Consulting Agreement, it does not have standing to pursue such a claim. *See Dinerstein v. Google, LLC*, 73 F.4th 502, 517 (7th Cir. 2023) (allegation of pecuniary injury "must be plausible 'to survive dismissal for lack of standing'" (quoting *Diedrich v. Ocwen Loan Servicing, LLC*, 839 F.3d 583, 588 (7th Cir. 2016))).

Specifically, Dikenoski argues that LLG relies only on conclusory, not factual, statements related to how Dikenoski's actions caused LLG harm. While the Court agrees that "[t]hreadbare recitals of the elements of a cause of action" do not suffice to state a claim, *Iqbal*, 556 U.S. at 678, LLG's allegations provide more than just conclusory statements of harm. True, under the heading "breach of contract," LLG includes language mirroring the elements of a breach of contract claim—that Dikenoski's offers of monetary inducements "were the actual and proximate cause of harm to LLG" and that LLG has suffered damages "in excess of $75,000, the exact amount to be proven at trial," Doc. 27 ¶¶ 58–59, 61—that arguably amounts to threadbare recitals of the required damages element, *see Illinois ex rel. Hammer v. Twin Rivers Ins. Co.*, No. 16 C 7371, 2017 WL 2880899, at *5 (N.D. Ill. July 5, 2017) ("The perfunctory allegation that Plaintiff 'has suffered, and will suffer damages of a pecuniary nature' is exactly that: a threadbare recital of damages that is not adequate to state a claim." (collecting cases)). But LLG's damages allegations do not exist in isolation and instead must be viewed in connection with the allegations that precede them in the first amended complaint. And by reviewing the first amended complaint as a whole, the Court finds sufficient factual allegations to support LLG's contention that Dikenoski offering inducements to the four establishments in violation of the Consulting Agreement caused LLG damages. Specifically, the first amended complaint maintains that IGB based additional, serious charges against LLG on Dikenoski's conduct, which

6

has caused it various harm. This harm includes lost business and profits, reputational harm, diminished equity value, and added costs in the administrative proceedings arising from Dikenoski's actions.[3] At the pleading stage, these allegations suffice for the Court to find that LLG has standing to pursue and has sufficiently stated a breach of contract claim. *See Pierre v. Midland Credit Mgmt., Inc.*, 29 F.4th 934, 938 (7th Cir. 2022) ("A plaintiff seeking money damages has standing to sue in federal court only for harms that have in fact materialized."); *N. Tr. Co. v. MS Sec. Servs., Inc.*, No. 05 C 3370, 2007 WL 9817819, at *3 (N.D. Ill. July 13, 2007) (finding that plaintiffs successfully alleged that "their injury resulted from defendants' breach" where they claimed that defendants' violation "prohibited them (and in turn their pension clients) from claiming the tax credit they allege they were entitled to, and caused them to lose millions of dollars that would otherwise have been distributed to the funds as a result of those credits").

---

[3] In its response, LLG also indicates it seeks to recover the compensation it paid Dikenoski. In reply, Dikenoski contends that the Consulting Agreement only allows LLG to withhold money it owed but had not yet paid Dikenoski if he violated the no inducement provision. Given the other allegations of harm, the Court need not decide whether the Consulting Agreement prohibits LLG from clawing back compensation it has paid Dikenoski.

Dikenoski also argues that LLG cannot recover the costs of defending against the IGB charges because the inducement charges predate Dikenoski's employment with LLG. But LLG contends that Dikenoski's violation of the no inducement provision caused it to incur additional costs in the administrative proceedings. Although it may be difficult for LLG to prove this allegation, at this stage, the Court cannot make such a determination and instead finds it plausible that LLG could recover such damages. *See Ohio Nat'l Life Assur. Corp. v. Davis*, 803 F.3d 904, 910 (7th Cir. 2015) ("[W]here the wrongful acts of a defendant involve the plaintiff in litigation with third parties or place him in such relation with others as to make it necessary to incur expense to protect his interest, the plaintiff can then recover damages against such wrongdoer, measured by the reasonable expenses of such litigation, including attorney fees." (alteration in original) (quoting *Ritter v. Ritter*, 381 Ill. 549, 554 (1943))). The Court also leaves the question of whether Dikenoski has immunity for making statements in a judicial proceeding to a later date, as that question is not determinative of whether LLG can proceed on its breach of contract claim.

Finally, the Court notes that it has not considered the fees that LLG incurs in this litigation as part of LLG's claimed harm. True, the Consulting Agreement allows the prevailing party in litigation to recover attorneys' fees if it prevails on a breach of contract claim, but such recovery depends on LLG prevailing on the breach of contract claim. *See* Doc. 27-1 at 2.

## II. Tortious Interference with Contract and Prospective Economic Advantage

Next, Dikenoski argues that LLG fails to sufficiently plead the necessary elements of its tortious interference with contract and prospective economic advantage claims. For tortious interference with a contract, LLG must plead "(1) the existence of a valid and enforceable contract between the plaintiff and another; (2) the defendant's awareness of the contractual relationship between the plaintiff and another; (3) the defendant's intentional and unjustifiable inducement of a breach of the contract; (4) a breach of contract by the other caused by the defendant's wrongful acts; and (5) damage to the plaintiff." *Chadha v. N. Park Elementary Sch. Ass'n*, 2018 IL App (1st) 171958, ¶ 60 (quoting *Cress v. Recreation Servs., Inc.*, 341 Ill. App. 3d 149, 175 (2003)). For tortious interference with prospective economic advantage, LLG must allege "(1) a reasonable expectancy of entering into a valid business relationship, (2) the defendant's knowledge of the expectancy, (3) an intentional and unjustified interference by the defendant that induced or caused a breach or termination of the expectancy, and (4) damage to the plaintiff resulting from the defendant's interference." *Grako v. Bill Walsh Chevrolet-Cadillac, Inc.*, 2023 IL App (3d) 220324, ¶ 23 (quoting *Voyles v. Sandia Mortg. Corp.*, 196 Ill. 2d 288, 300–01 (2001)). LLG alleges that Dikenoski's conduct in offering inducements to four establishments and then lying to IGB about LLG encouraging him to offer those inducements caused IGB to pursue additional damaging charges against LLG, which resulted in the termination of eight Use Agreements and the loss of twelve potential video gaming locations.[4] While Dikenoski makes several arguments for dismissal of both claims, the Court need only address one: that LLG has failed to sufficiently allege intentional interference.

---

[4] LLG also appears to contend that it lost the relationships it expected to develop with the four establishments with which it entered into agreements through Dikenoski's efforts. But in those cases, LLG successfully entered into Use Agreements with the establishments due to Dikenoski's allegedly improper actions.

Both of LLG's tortious interference claims require allegations that Dikenoski intentionally interfered with one of LLG's existing Use Agreements or LLG's expectations of entering into Use Agreements with prospective customers. *Vajda v. Arthur Andersen & Co.*, 253 Ill. App. 3d 345, 358 (1993). Dikenoski must have directed his actions at the third parties, not LLG. *See Law Offs. of Charles Chejfec, LLC v. Franz*, 2023 IL App (3d) 230083, ¶ 40 (tortious interference with contract); *Boffa Surgical Grp. LLC v. Managed Healthcare Assocs. Ltd.*, 2015 IL App (1st) 142984, ¶ 28 (tortious interference with prospective economic advantage). Additionally, Dikenoski must have intended for the third parties to breach their contracts or refuse to enter into a contract with LLG. *See Doctor's Data, Inc. v. Barrett*, 170 F. Supp. 3d 1087, 1156 (N.D. Ill. 2016) ("The plaintiff must show . . . that the defendant *intended* that result; the intentional inducement element is not met if the defendant merely knew that its conduct was certain or substantially certain to result in the third party breaching the contract."); *Boffa*, 2015 IL App (1st) 142984, ¶ 28 ("It is not enough for the defendant's action to impact a third party; rather, the defendant's action must be directed towards the third party.").

LLG's allegations fall short. LLG does not allege that Dikenoski directed his actions at the identified existing or prospective customers. *See KC Rental, LLC v. WMK Automotive, Inc.*, No. 24 C 741, 2024 WL 4226275, at *4 (N.D. Ill. Sept. 18, 2024) ("The mere fact that [the defendants'] alleged actions harmed [the plaintiff's] business does not mean that those actions intentionally and specifically interfered with [the plaintiff's] business expectancy as to its customers, financers, or any other third party."); *Life Spine, Inc. v. Aegis Spine, Inc.*, No. 19 CV 7092, 2021 WL 83550, at *5 (N.D. Ill. Jan. 11, 2021) (tortious interference with contract claim failed where the plaintiff alleged that the defendant's conduct had a "downstream impact" on the plaintiff's customers but did not premise its claim "on acts immediately directed at a third party

9

which cause[d] that party to breach its contract with the plaintiff" (quoting *George A. Fuller Co. v. Chi. Coll. of Osteopathic Med.*, 719 F.2d 1326, 1331 (7th Cir. 1983))). And while LLG has alleged that Dikenoski had knowledge of some of LLG's contracts and business expectancies and that Dikenoski's conduct paved the way for the termination of LLG's relationships with its customers or the failure for such relationships to materialize, such allegations do not suffice to suggest that Dikenoski intentionally interfered with LLG's relationships with these existing and potential customers. *See Brown v. Montgomery*, No. 20 CV 04893, 2024 WL 1243669, at *6, 8–9 (N.D. Ill. Mar. 22, 2024) (tortious interference with contract and prospective economic advantage claims failed where the plaintiff alleged only that the defendants' actions had a "downstream impact" on the contract and did not suggest that the defendants acted "with the express purpose of interfering" with the plaintiff's relationships); *Franz*, 2023 IL App (3d) 230083, ¶¶ 39–40 (knowledge of a contract is a separate element from intentional inducement element); *Cohen v. Lewis*, No. 03 C 5454, 2004 WL 2481015, at *7 (N.D. Ill. Nov. 3, 2004) (to prove tortious interference with contract, the plaintiff will have to show more than that the defendant "merely created a condition that opened the way for the [third parties] to breach their contracts"); *Dowd & Dowd, Ltd. v. Gleason*, 181 Ill. 2d 460, 485 (1998) ("[A] plaintiff must show not merely that the defendant has succeeded in ending the relationship or interfering with the expectancy, but 'purposeful interference'-that the defendant has committed some impropriety in doing so."). Without such allegations, LLG cannot proceed on its tortious interference claims.[5]

---

[5] Although the Court need not address Dikenoski's other arguments for dismissal at this time, the Court encourages LLG to take them into account if it decides to replead its tortious interference claims.

## CONCLUSION

For the foregoing reasons, the Court grants in part and denies in part Dikenoski's motion to dismiss [28]. The Court dismisses LLG's tortious interference of contract and tortious interference with prospective advantage claims without prejudice.

Dated: October 28, 2024                                          _____
                                                                                 SARA L. ELLIS
                                                                                 United States District Judge